No. 30,454.

Tangie D. Godsey, *Appellee*, v. Manley Cox and The Business Men's Protective Association, *Appellants*.

(10 P. 2d 871.)

Opinion filed May 7, 1932.

*Irwin Snattinger, Hugh T. Fisher, E. B. Smith,* all of Topeka, and *A. B. Mitchell,* of Lawrence, for the appellants.

*George K. Melvin, R. E. Melvin,* both of Lawrence, and *Daniel T. Johnson,* of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

Johnston, C. J.: This action was brought by Tangie D. Godsey against Manley Cox and the Business Men's Protective Association to recover damages sustained by plaintiff in a collision of automobiles on U. S. highway No. 73, which resulted in serious injuries to the plaintiff. At the trial a general verdict was rendered for the plaintiff in the sum of $10,000, itemized in special findings of $6,000 for permanent injuries, $3,000 for pain and suffering, and $1,000 for hospital and other expenses. A motion for a new trial was presented, which was overruled on condition that the plaintiff would remit $550 of the allowance for expenses. The remittitur was filed by plaintiff, and judgment was rendered for $9,450. Defendants appeal.

Plaintiff, it appears, was a guest of her sister, Mrs. Eaton, who was driving a Chevrolet car from Kansas City westward, with Helen Eaton, a daughter of Mrs. Eaton, seated on the front seat with the driver. The plaintiff was sitting in the back seat of the car. When they reached a point on highway No. 73 about six miles northwest of Lawrence they discovered the defendant's car, which was a Hudson, coming from the west near the middle of the road at a speed estimated by witnesses as fifty-five to sixty miles per hour.

There is a conflict in the evidence as to the speed of the Hudson car, and also as to the management of the cars as they came into collision, which appears to have occurred on a straight road in the open country where there were no obstructions to the view of either driver.

Plaintiff's evidence was to the effect that the Hudson car driven by Cox was coming from the west at a speed of sixty miles an hour in the middle of the road with a wavering and zigzagging motion, and partly on the wrong side of the road; that the driver of the Chevrolet was on the right or north side of the road traveling twenty-five to thirty miles an hour, and that Mrs. Eaton drove towards the edge of the road to avoid the Hudson car, which seemed to be heading for the Chevrolet, and that her daughter Helen, seeing the Hudson car coming towards them and fearing a collision, suddenly grabbed the steering wheel of the Chevrolet and pulled it to the left, when a collision with the Hudson occurred, which resulted in the death of Mrs. Eaton, her daughter Helen, and the injury to the plaintiff. There are no complaints of rulings on the admission of evidence or of instructions given or refused, but the only complaint is that the evidence is insufficient to establish negligence on the part of Cox, and the contention is that the collision was caused by the act of Helen Eaton in grabbing the wheel and turning the car towards and into the path of the car driven by Cox, and that defendants are not legally liable for Helen's act. Special findings were returned, one of which was:

Q. "Did the daughter of the driver of the automobile in which plaintiff was riding, just before the collision, grab the wheel and swerve said automobile across the road and into the path of the defendant Cox's automobile? A. Yes."

While Cox denies he was driving at an excessive rate of speed or in a careless way, several witnesses testified that he was driving at a speed of from fifty-five to sixty miles an hour, but a more serious matter was that he was wavering from one side of the slab to the

other or wrong side as he approached the Chevrolet. A motorist who was changing a tire near the place of collision testified that the Hudson was being driven half on the left-hand side and that:

"This fellow (Cox) kept driving down the road and kept driving in a wavering manner, from the center, and a little over to the left and back over to the right, and kept doing that."

Another witness stated that the Hudson car was going at a speed of sixty miles an hour, was wavering and apparently out of control, that sometimes he was on the wrong side of the slab and just an instant before the collision the Chevrolet turned somewhat to the left and appeared to be trying to get around the Hudson car. The plaintiff, who was riding in the back seat of the Chevrolet, testified that they were traveling along on the right side of the road at a rate from twenty-five to thirty miles an hour, and as to the collision she said the first thing she saw was "a big black car coming as fast as it could come, right at us," when she jumped and grasped the back of the seat in front of her and at the same time Helen shouted, "Oh, mama," and grabbed the wheel which turned the car to the left. The slab was concrete, being eighteen feet wide, with a black mark in the center of the slab. On either side of the slab was a shoulder and outside of the shoulder a ditch. As to careless and wavering driving of the Hudson car as it approached the place of collision, Cox and his companion testified that the speed did not exceed forty miles an hour, that they were going straight ahead and were not on the wrong side of the road, and that the Chevrolet was suddenly swerved in front of the Hudson followed by a collision.

Manifestly the jury gave credence to the evidence of plaintiff's witnesses as to the manner of driving the Hudson and its position on the wrong side of the road. The manner of driving the Hudson as described by the witnesses, and evidently believed by the jury, constituted gross negligence. The jury did find that when Helen Eaton grabbed the wheel of the Chevrolet the car was swerved to the left and defendants say that she was negligent and her action caused the collision, but the testimony which was believed, and must control on this appeal, shows that Cox was driving on the wrong side of the road, and was heading directly towards the Chevrolet when Helen grabbed the wheel. Perhaps it would have been a wiser or better course to have pulled it to the right, even into the ditch. Naturally when the women in the Chevrolet saw the big black Hudson car headed directly towards them at a high speed it caused a

sudden fright, and when there was no time to deliberate as to which way was best to avoid the Hudson car, the impending danger that threatened the lives of the three women would naturally throw them into a condition of panic. Perhaps the position and direction of the Hudson car led Helen to think she could best avoid a collision by turning to the left and going around the Hudson car. The plan was not successful, but who can say that some other plan would have been judicious and would have avoided a collision? Under the circumstances of the emergency it cannot be held that the action of Helen constitutes negligence which relieves defendants from liability for their own negligence, which brought about the situation that caused the smash-up and injury to plaintiff.

In *Barnhardt v. Glycerin Co.*, 113 Kan. 136, 213 Pac. 663, the negligence of persons suddenly placed in a position of peril and impending danger was considered and sanction was given to the following rule:

"The rule judicially stated is that one who in a sudden emergency acts according to his best judgment or who because of want of time in which to form a judgment, omits to act in the most judicious manner, is not chargeable with negligence." (20 R. C. L. 29.)

In *Ryan v. Atchison, T. & S. F. Rly. Co.*, 131 Kan. 706, 293 Pac. 763, the act of a railroad employee in an emergency was discussed and the employee was asked why he didn't apply the emergency brake (the angle cock) or signal the engineer, and his answer was, "Because I didn't have time." It was remarked:

"He may have employed the wrong means to avoid the injury, but if he had attempted to use either of the other means it might have been unsuccessful and the censure could with equal force have been applied to him for failing to hurriedly push him off the track. Negligence cannot be predicated upon the choice of the wrong means pursued to avoid the injury in an emergency." (p. 715.)

And the rule of *Barnhardt v. Glycerin Co.*, supra, was approved.

In *Webb v. Lipperd*, 134 Kan. 764, 8 P. 2d 381, where an automobile was wrecked on a curve of the road, the question was whether one or the other of two courses should have been followed. It was remarked:

"Defendant also makes the point that when defendant saw the unexpected automobile approaching around the curve from the northwest he should not be held liable for his error in judgment in applying his brakes as he swerved to avoid the collision. Probably so. Persons suddenly confronted with imminent danger do things which ordinarily might be regarded as negligence but which are excused by the circumstances." (Citing the Ryan case.) (p. 768.)

We hold there is sufficient evidence to sustain the verdict finding the defendants were guilty of negligence and that their negligence caused the injury to plaintiff.

It follows that the judgment must be affirmed. It is so ordered.