No. 39,845

MARGUERITE I. BOURGEOIS, *Appellant,* v. THE STATE HIGHWAY COM-
MISSION OF THE STATE OF KANSAS, *Appellee.*

(292 P. 2d 683)

*Opinion filed January 28, 1956.*

*Elmer Hoge,* of Overland Park, argued the cause and was on the briefs for
the appellant.

*Donald C. Amrein,* of Topeka, argued the cause, and *W. B. Kirkpatrick,*
assistant attorney general, *Connie Achterberg,* of Topeka, and *Robert P. Ander-
son,* of Overland Park, were with him on the briefs for the appellee.

The opinion of the court was delivered by

ROBB, J.: There was originally a condemnation proceedings by
the state highway commission under the authority of eminent
domain. Marguerite I. Bourgeois, the appellant here, appealed to
the district court from the award of the appraisers and later filed
the instant appeal from the verdict, judgment and rulings of the
trial court.

The record discloses the following facts in connection with the
condemnation proceedings:

Appellant owned 11.21 acres of land in the vicinity of Turkey
Creek in the northwest portion of Mission township, Johnson
county, which were condemned by the state highway commission
in order to extend U. S. highway 69; this land was Turkey Creek
bottom land and was 1.1 miles north of Shawnee-Mission High

School; there were two tracts of land involved; the commissioners appointed by the court awarded damages for 9.89 acres in the sum of $7,045.00 and for 1.32 acres in the sum of $455.00, which made a total award of $7,500.00 for the 11.21 acres.

As previously stated, an appeal from the above award was taken to the district court. Jury trial ensued and the verdict was for appellant in the sum of $8,500 for both tracts as a unit. Appellant moved for new trial, the motion was overruled, and this appeal followed.

There were nineteen specifications of error, the first fifteen of which were objections to the trial court's rulings admitting or excluding evidence; No. 16 was objection to the trial court allowing the jury to view the premises after changes therein; No. 17 was that the trial court erred in overruling motion for new trial; No. 18 was that jury members were guilty of misconduct, prejudicial to appellant, while viewing appellant's premises; and No. 19 was another objection to the court's ruling on evidence.

The property was zoned for residential purposes and was being used by appellant and her aged father as a home. All the land was tillable or usable for truck farming or gardening.

We shall first dispose of the question relating to the trial court's exclusion of evidence on the part of appellant. The record does not disclose that evidence on this point was offered by the appellant on her motion for new trial and for that reason this contention cannot be considered on appeal to this court. G. S. 1949, 60-3004 controls where an appeal is taken from the overruling of a motion for new trial by the trial court. The material part of that statute is as follows:

"In all cases where the ground of the motion is error in the exclusion of evidence . . . such evidence *shall* be produced at the hearing of the motion by affidavit, deposition or oral testimony of the witnesses. . . ." (Our emphasis.)

In view of the above statute it is not necessary to cite the multitudinous list of opinions by this court substantiating and repeating the rule.

The next question pertained to the rulings of the trial court which limited the cross-examination by appellant of the witnesses offered by appellee on the trial. In order to make clear the justification for considering this question, it is necessary to set out some of the testimony adduced from experts which was offered by appellee and was accepted by the trial court.

Appellee's first witness, Earl M. Maness, qualified as a real estate expert and set the monetary value of appellant's property at $7,500.00 because he believed the most advantageous use of the property was for farming. He had not inquired into the zoning of the property. His testimony on cross-examination, in part, was:

"Q. I will ask you if they didn't build right down in the creek banks in Prairie Village where it flooded for years? A. I didn't.

"Q. Well, do you know whether the J. C. Nichols Company did, or other developments—

"The Court (Interrupting): I believe I will sustain an objection on that. It is a little remote.

"Q. I will ask you whether or not if you know what land is selling for along Southwest Boulevard?".

Objection was made to the last question. There was a distance of about four blocks involved and the trial court sustained the objection. The property involved in this appeal and the property along Southwest Boulevard were both in Mission township.

Appellee's second witness, William L. Embree, qualified as a real estate expert. He also valued appellant's property at $7,500.00. He believed its highest and best use was for agricultural purposes. He testified that the property was incapable of normal loaning support. On cross-examination Embree testified that he had appraised the Murray tract at $3,350.00, the Beil tract of 7.41 acres at $14,107.00, and the McLeod tract of 2.4 acres located some 300 yards to the north at $2,000.00. The court sustained an objection to the following question because it was too remote,

"Isn't it a fact that over in Prairie Village they built on creeks just as low as this . . .,"

and the court commented,

"To get in to showing it was a comparable situation would be too lengthy."

Appellee's third witness, Harry A. Wilson, who also qualified as a real estate expert, determined the highest and best use of the land was for residential and agricultural purposes, and he set the value at $7,500.00. His cross-examination included the following:

"Q. You heard his testimony that he said his [Embree's] value was $7,500.00? A. Yes, I heard that, $7,500.00.

"Q. And you heard Mr. Maness say that in his opinion it was worth $7,500.00? A. Yes, sir.

"Q. And all three of you witnesses here come up with the same figure, $7,500.00? A. May I tell you why?

"Q. Just answer the question. A. Because we had to come up with the same figure, not necessarily $7,500.00, but it had to be one figure.

"Q. And one of you out of the three couldn't have disagreed. Is that right?
"The Court: I think I will sustain an objection on that.

. . . . . . . . . . . . . . .

"Q. Have you been engaged in business down in around this area where this property is located? A. Yes, sir. I own 40 acres immediately to the east of that on Nall Avenue, almost due east, at a point just west of Nall.
"How far would that be from this property? A. Well, the distance from Nall over there would probably be three-quarters of a mile, or probably a mile.
"Q. Is it improved or unimproved? A. Unimproved.
"Q. What would you place the value of that property at? A. Around $400.00 an acre.

. . . . . . . . . . . . . . .

"Q. . . . Would you sell it for that?"

The court sustained an objection, saying, "I don't believe it is proper either. Maybe the property isn't for sale at all. Maybe he doesn't want to sell it. Maybe he wants to divide it. So that wouldn't be a proper question." The cross-examination continued.

"Q. Now, in arriving at your value of this property, how much consideration did you give to the improvements?"

There was an objection on the ground that land and improvements cannot be vested into separate units and the court said,

"He can state whether it was one of the major portions of the consideration. He can't divide it.

. . . . . . . . . . . . . . .

"Q. . . . What valuation would you put on this property as of May 4th of this year, if there were no improvements on it?"

An objection to the last question was sustained.

Appellant contended appellee was making so much out of the condition of the improvements that she wanted to find out the value with no improvements. The court stated that was not the question for the court and jury; the question was the market value of the property as it then existed; the improvements and location could be taken into consideration, but the property would have to be considered as a unit.

The cross-examination of Wilson continued.

"Q. Have you ever seen it [the property] flooded? A. No, but to the east of this on Antioch, on two properties that we had sales for, we were unable to complete the sales because we had to make an investigation for the loan companies to see if it flooded, and we went to the United States Army records and found that . . . it has flooded at least three times in the 25 years. . . .

"Q. You are acquainted with other developments in Mission Township, along creeks, are you not, along Brush Creek?  A.  Yes.

"Q.  And Rock Creek?  A.  Yes.

"Q.  And those areas flood just the same as Turkey Creek, do they not?"

The court sustained an objection by appellee to the above, saying, "We won't get in to Brush Creek and Rock Creek."

These three witnesses were placed on the stand by appellee as experts.  They were well qualified to state their opinions, and they all testified as to the value of appellant's property.  (*Mai v. City of Garden City*, 177 Kan. 179, 277 P. 2d 636.)  This was proper but appellant had the right on cross-examination to test the credibility of the testimony of the witnesses by asking qualifying questions as to the extent of the knowledge on the part of each witness, and as to each and every element that such witness took into consideration in arriving at his opinion of the value of the property. That part of the record set out herein shows appellant was not afforded an opportunity to cross-examine appellee's witnesses and she was prejudiced thereby in the trial.  On cross-examination great latitude is necessarily indulged in order that the intelligence of the witness, his powers of discernment and his capacity to form a correct judgment may be submitted to the jury so it may have an opportunity for determining the value of his testimony.  (*State v. Reddick*, 7 Kan. 143; *K. C. & T. Rly. Co. v. Vickroy*, 46 Kan. 248, 26 Pac. 698; *C. K. & N. Rly. Co. v. Stewart*, 47 Kan. 704, 707, 28 Pac. 1017; *State v. Buck*, 88 Kan. 114, 128, 127 Pac. 631; 58 Am. Jur., Witnesses, § 847.)

If this were not the rule in condemnation proceedings there would be no reason for providing for appeal from an award by commissioners because their conclusion, standing alone, would be final even though great injustices might result.

The trial court erred in unduly limiting the cross-examination by appellant and we think this was to her prejudice to the extent that she was not afforded a fair trial.  The judgment, therefore, should be reversed.

We have not overlooked other contentions of the appellant, but we do not deem it necessary to cover these phases of the appeal in view of what we have said on the question that the trial court unduly limited the cross-examination.

The judgment is reversed and a new trial ordered.

THIELE, J. (dissenting in part):  I agree with the rule stated

in the opinion as to the latitude to be extended on cross-examination but am of the opinion the cross-examination was not unduly restricted as to the witnesses Maness and Embree nor as to a considerable part of the testimony of witness Wilson. The questions asked Maness and Embree concerned matters too remote to have any value. The objection to a question as to what price Wilson would sell his 40-acre tract, located about a mile from the involved real estate, was properly sustained. It was proper to inquire of him what consideration he gave to the improvements on the condemned property.

PRICE, J., concurs in the foregoing partial dissent.